BROWN et al. v. CITY OF AMARILLO.*
(No. 834.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 6, 1915. On Motion for Rehearing, Dec. 11, 1915.)

1. MUNICIPAL CORPORATIONS ☞105—OFFICERS — COMPENSATION — STATUTORY PROVISIONS.

Rev. St. 1911, art. 807, refers to the approval or disapproval by the mayor of a city of ordinances and resolutions adopted by the council. Article 811 provides that the city treasurer shall receive such compensation as shall be fixed by the city council. · Article 816 provides that the city council on or before the 1st day of January preceding each election shall establish the compensation or salary of officers elected or appointed by it. Held, that the council could fix the salary of the city treasurer by resolution.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 223, 224; Dec. Dig. ☞105.]

2. MUNICIPAL CORPORATIONS ☞115—OFFICERS — COMPENSATION — STATUTORY PROVISIONS.

Rev. St. 1911, art. 816, requires the city council on or before the 1st day of January preceding each election to establish the compensation of officers elected or appointed by it. An ordinance adopted in 1902 required the city at the first regular meeting after each general election to fix the compensation and fees of all city officers for the next ensuing term, and such compensation to remain in force until changed, and that such compensation might be fixed by an order spread upon the minutes. An ordinance adopted in 1904 provided that the city secretary should receive for performing the duties of city treasurer certain commissions on moneys received and disbursed. A resolution adopted December 31, 1909, provided that for the ensuing term the salary of the city secretary and treasurer was fixed at $10 a month "and fees as set by ordinance" up to $2,000 per annum, and that any amount exceeding $2,000 per annum should

be paid into the city treasury. Held, that the resolution did not repeal the ordinance specifying the commissions to be paid the secretary and treasurer, as, in view of the statute, that ordinance was not temporary and ceased to operate at the expiration of the term, especially where the council acted by again fixing the compensation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 266½, 267; Dec. Dig. ☞115.]

3. MUNICIPAL CORPORATIONS ☞124 — OFFICERS — COMPENSATION — STATUTORY PROVISIONS.

The resolution complied with the statute by fixing the amount of the fees and compensation to which the secretary and treasurer was entitled, as the computation of the commission was not changed except as the amount was limited, and if the ordinance had expired the resolution was clear and unambiguous as to the amount the secretary and treasurer should receive, while, if it merely limited the amount to be received out of the commissions allowed the secretary and treasurer, the council had the right for the ensuing term to fix a less amount than the maximum which might accrue under the ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 290–297; Dec. Dig. ☞124.]

4. MUNICIPAL CORPORATIONS ☞162 — OFFICERS — COMPENSATION — CONSTRUCTION OF RESOLUTIONS—"FEE."

The salary and fees which the resolution provided should not exceed $10 a month and fees not to exceed $2,000 included commissions, as the primary meaning of the word "fee" includes compensation in the nature of commissions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

For other definitions, see Words and Phrases, First and Second Series, Fee.]

5. STATUTES ☞219 — CONSTRUCTION — PRACTICAL CONSTRUCTION.

While the construction placed upon a statute by the officers whose duty it is to execute it is entitled to consideration, the courts are not bound to accept such construction when the act is clear and unambiguous.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. ☞219.]

6. MUNICIPAL CORPORATIONS ☞162—OFFICERS — COMPENSATION — APPROVAL OF REPORTS.

Under Rev. St. 1911, art. 811, providing that the city treasurer shall make payments of moneys belonging to the city upon the order of the mayor attested by the secretary, where a city secretary and treasurer made reports to the city council showing commissions on moneys received and disbursed in excess of the amount to which his commissions were limited by ordinance and resolution, the approval of such reports did not indicate an intent to allow him the entire commissions unless they were paid by him on the order of the mayor properly attested and reported as so paid, as otherwise the council would not necessarily know that he intended to appropriate all of such commissions to his individual use.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

7. MUNICIPAL CORPORATIONS ☞162—RECOVERY BACK—MISTAKE OF LAW.

Under Rev. St. 1911, art. 811, providing that the city treasurer shall make payments of

the city's money upon the order of the mayor attested by the secretary, and that no order shall be paid unless it shows upon its face that the city council has directed its issuance and for what purpose, where a city treasurer did not pay to himself upon the order of the council commissions in excess of those to which he was entitled, but simply retained them from money received by virtue of his office, there was no payment of the money by the city under a mutual mistake of law so as to prevent recovery by the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

8. MUNICIPAL CORPORATIONS ☞162 — OFFICERS—COMPENSATION—PAYMENT.

If an ordinance and resolution of a city council did not warrant a payment to the city treasurer of certain commissions claimed by him, the mayor could give no order therefor under Rev. St. 1911, art. 811.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 357–367, 369, 372, 374; Dec. Dig. ☞162.]

9. MUNICIPAL CORPORATIONS ☞173—OFFICERS—LIABILITY OF SURETIES.

Rev. St. 1911, art. 800, provides that when the term for which any city officer was elected or appointed has expired he shall deliver to his successor all books, papers, and fixtures pertaining to his office. A resolution of a city council provided that the city treasurer should receive fees fixed by ordinance up to $2,000 and that any amount exceeding $2,000 should be paid into the city treasury. Held that, under a bond conditioned that the treasurer would faithfully receive and disburse all moneys belonging to the city in accordance with the laws of the state and the ordinances of the city, he and his bondsmen were liable for any sum retained by him as commissions above the amount allowed him, though the resolution only fixed his salary and did not require any disbursement of the money, as the law made it his duty to turn it over to his successor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. ☞173.]

10. MUNICIPAL CORPORATIONS ☞172—OFFICERS—DUTY TO TURN OVER FUNDS TO SUCCESSOR.

Under Rev. St. 1911, art. 800, an outgoing city treasurer is required to turn over funds belonging to the city and is liable in a civil suit in case of failure as well as for other penalties.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 396–398; Dec. Dig. ☞172.]

11. MUNICIPAL CORPORATIONS ☞173—OFFICERS—ACTIONS ON BONDS—EVIDENCE.

In an action on a city treasurer's bonds which were substantially set out in the original petition and the execution of which was admitted by the answers, there was no injury or error in admitting them in evidence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. ☞173.]

12. APPEAL AND ERROR ☞1045—HARMLESS ERROR—CHALLENGES TO JURY.

The refusal to allow a peremptory challenge to the jury, if error, was harmless, where the court took the case from the jury and instructed a verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4124–4127; Dec. Dig. ☞1045.]

On Motion for Rehearing.

13. MUNICIPAL CORPORATIONS ☞120—ORDINANCES — CONSTRUCTION — PRACTICAL CONSTRUCTION.

An ordinance provided that the city secretary as city treasurer should receive certain commissions on moneys received and disbursed and that the city secretary acting as treasurer should not be entitled to any commissions for receiving moneys from his predecessor or paying them to his successor. A resolution subsequently passed provided that the salary of the city secretary and treasurer for the ensuing term was thereby fixed at $10 a month and fees "as set by ordinance" up to $2,000 per annum. No other ordinance setting up any fees for such officer acting in the dual capacity of secretary and treasurer was disclosed in the record. Held that, even though there were other ordinances prescribing and designating fees referable to his position as city secretary, he had to refer to the ordinance in question to obtain a rate for his compensation so far as his revenue derivable from the collection and payment of moneys was concerned, and the resolution evidently referred to the same ordinance, and hence there was no ambiguity authorizing a resort to an executive interpretation of the meaning of the resolution.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 274–280; Dec. Dig. ☞120.]

14. MUNICIPAL CORPORATIONS ☞173—OFFICERS—LIABILITY OF SURETIES.

Where a city secretary and treasurer executed separate bonds as secretary and as treasurer, if he as treasurer permitted himself as secretary to receive and retain as commissions an amount to which he was not entitled, the treasurer and his bondsmen were liable, as he as secretary necessarily received and retained the money from himself as treasurer, and as treasurer he had no lawful justification for permitting this.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 399–409; Dec. Dig. ☞173.]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by the City of Amarillo against Sam J. Brown and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Cooper & Merrill, of Houston, and Lumpkin & Harrington, of Amarillo, for appellants. Crudgington & Works and J. B. Dooley, all of Amarillo, for appellee.

HUFF, C. J. This suit was instituted by the city of Amarillo against Sam J. Brown, as city secretary and treasurer, and upon his official bond as such, with B. T. Ware, W. M. Lay, and Louis Anthony as sureties thereon.

The assignments in this case assail the action of the trial court in overruling certain exceptions to the plaintiff's petition, and in sustaining certain exceptions to the appellants' answer; and also assignments assailing the action of the court in instructing a verdict for the appellee, the city of Amarillo. In considering the case we shall not notice the several assignments in the order named with reference to the action of the courts ruling upon the pleadings, but believe that

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the case will be sufficiently understood by stating the salient facts in the case.

At the time of the transactions complained of in the petition in this case, it appears from the pleadings and admissions in the pleadings that the city of Amarillo was incorporated as a city under the general laws of the state of Texas, and that appellant Sam J. Brown was elected city secretary and treasurer on the 9th day of April, 1910, and shortly thereafter qualified as such. The city secretary and treasurer is substantially admitted by the pleadings in this case to have been combined in one office, but the officer executed two bonds, one as city secretary and one as treasurer. It is alleged, and the facts are substantially uncontroverted, that during the term of office of Sam J. Brown, from April, 1910, until April, 1911, Sam J. Brown for the year received and appropriated the sum of $5,414.58, claimed as due him for salary, fees, and commissions from April 21, 1910, to April 21, 1911. From April 21, 1911, to April 21, 1912, he received the sum of $4,947.31, claimed to be due him for salary, fees, and commission. It is alleged that he retained $6,121.89 more than was due him for such services. The facts are practically uncontroverted and admitted that he received such sums of money, he contending under the city ordinances that he was entitled to said sums of money by virtue of his office. The controversy and the rights of the parties depend upon the construction of the following ordinances:

Ordinance No. 61, approved the 27th day of March, A. D. 1902, found on page 52:

"Ordinance No. 61. An ordinance 'amending ordinance No. 6,' entitled 'An ordinance fixing the compensation and fees of the various officers of the city of Amarillo.'

"Be it ordained by the city council of the city of Amarillo: That Ordinance No. 6 of said city be and is hereby amended by adding thereto sections 7 and 8 which shall read as follows: Section 7. It shall be the duty of the city council at the first regular meeting after the next general election for officers of said city, or as soon thereafter as practicable, and at the first regular meeting after each succeeding general election for officers of said city or as soon thereafter as practicable, to fix the compensation and fees of all the officers of said city, for the next ensuing term; and the compensation so fixed by the council, shall remain and be in force until modified or changed by the council under the provisions of this ordinance; provided that no ordinance shall be required to be passed in fixing said compensation, but the same may be done by an order of said council, spread upon its minutes, fixing the amount of said compensation and fees of the officers of said city."

Ordinance No. 100, approved the 12th day of April, 1904, which is as follows:

"Ordinance No. 100. An ordinance amending section 12 of Ordinance No. 2, entitled 'An ordinance providing for the appointment of a city secretary of the city of Amarillo and defining the powers and duties of said office.' Be it ordained by the city council of the city of Amarillo:

"Section 1, That section 12 of Ordinance No. 2, entitled 'An ordinance providing for the appointment of a city secretary for the city of Amarillo, and defining the powers and duties of said office,' be amended so as to read as follows: Section 12. As compensation for performing the duties of city treasurer, the city secretary shall receive a commission of 2½ per cent. of all moneys received into the city treasury and shall receive a like sum for paying out the same, excepting any monies received or disbursed on account of the sale of bonds or collected or disbursed for school purposes, on each of which his commission shall be one per cent. for collecting and the same for disbursing, and further excepting any loans or investments that may be made of the interest and sinking fund and receiving the same back into the treasury, on which his commission shall be one-half of one per cent. for disbursing and the same for receiving such investment back into the treasury; but the city secretary acting as treasurer, shall not be entitled to any commissions for receiving any moneys from his predecessor nor for paying over the same to his successor."

Resolution passed December 31, 1909, as follows:

"Moved by McKnight, seconded by Person, that the salary of the city secretary and treasurer for the ensuing term be fixed at $10.00 per month and fees as set by ordinance, up to $2,000.00 per annum, any amount exceeding $2,000.00 to be paid into the city treasury. Motion carried."

Sam J. Brown executed a bond to the city of Amarillo, with B. T. Ware, M. W. Lay, and Louis Anthony as sureties thereon, in the sum of $80,000, with the following condition:

"The condition of the above obligation is such that, whereas, the above bounden was on the 9th day of April, 1910, duly elected to the office of treasurer, in and for the city of Amarillo, in the state of Texas: Now therefore, if the said Sam J. Brown shall faithfully perform and discharge all the duties required of him by law and ordinances of said city as treasurer, aforesaid, and shall faithfully receive and disburse all monies belonging to said city in accordance with the laws of the state of Texas, and ordinances of said city of Amarillo, Texas, then this obligation be void, otherwise to remain in full force and effect."

The bond is dated the 20th day of April, 1910; and also a bond with the same sureties, in the sum of $1,000, conditioned as follows:

"The condition of the above obligation is such that whereas, the above bounden was, on the 9th day of April, 1910, duly elected to the office of city secretary in and for the city of Amarillo, in the state of Texas: Now, therefore, if the said Sam J. Brown shall faithfully perform and discharge all the duties required of him by law and the ordinances of said city as city secretary aforesaid, then this obligation to be void; otherwise to remain in full force and effect."

This bond is also dated the 20th day of April.

[1] The record in this case presents the question of authority by the city council to fix the salary of the city secretary and treasurer, on the date and in the manner appellee claims it was fixed. The salary and fees of that officer were fixed by resolution on the 31st day of December, 1909. By article 816, R. C. S., it is provided:

"The city council shall, on or before the first day of January next preceding each and every election, * * * establish the compensation or salary to be paid to the officers elected or ap-

pointed by the city council"—which shall not be changed during the term of office.

Article 811, R. C. S., provides that the treasurer sha'll receive such compensation as shall be fixed by the city council. Article 807, R. C. S., clearly evidences that the council may act by resolution as well as by ordinance. The general law under which the city was acting, and which confers upon the council the power to fix the salary, does not require that body to act therein in any particular manner. It is simply provided that the compensation be fixed before the 1st day of January next preceding "each and every election." We believe any form which the council might adopt in performing this duty so as to express its decision as to what the salary or compensation shall be would comply with the statutes. City of Green Bay v. Brauns, 50 Wis. 204, 6 N. W. 503; Dillon on Municipal Corporations, vol. 2, § 572; Waco v. Prather, 90 Tex. 80, 37 S. W. 312; Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; Brummer v. Galveston, 97 Tex. 93, 76 S. W. 428; Board of Education v. De Kay, 148 U. S. 591, 13 Sup. Ct. 706, 37 L. Ed. 573; Hart v. City of Minneapolis, 81 Minn. 476, 84 N. W. 342; Blanchard v. Bissell, 11 Ohio St. 96, on page 103; Alma v. Bank, 60 Fed. 203, 8 C. C. A. 564.

[2] It is contended by appellant that the resolution of December 31, 1909, in effect repealed Ordinance 100, dated April 12, 1904, which allowed as compensation to the city treasurer and city secretary 2½ per cent. for money received into the treasury and a like amount for paying it out, except moneys received or disbursed on account of the sale of bonds or collected or disbursed for school purposes, on each of which his commission should be 1 per cent. for collecting and disbursing, etc. It is asserted that an ordinance cannot be repealed by a resolution; that in order to repeal an ordinance it must be done by any act of equal dignity. This we think cannot be and is not denied; but it is the settled rule of construction in this state. City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S. W. 735. The resolution above referred to fixed the compensation for the officer for the term next succeeding its date. Ordinance 100, relied on by appellant, must, in its nature, have been temporary in the light of the statutes which authorized it. Blanchard v. Bissell, 11 Ohio St. 103. The statutes require that the fees, etc., be fixed, "next preceding each and every election." Ordinance 61 also declared it to be the duty of the city council "after each succeeding general election, for officers of said city, or as soon thereafter as practical, to fix the compensation and fees of all officers for the next ensuing term; and the compensation so fixed by the council shall remain and be in full force until modified or changed by the council under the provisions of this ordinance, provided that no ordinance shall be required to be passed in fixing said compensation the

180 S.W.—42

same shall be done by an order of said council spread upon the minutes fixing the amount of said compensation and fees of the officer of said city." It was clearly the purpose of the Legislature, as well as the city council, that the act fixing the compensation of officers should be for one term, and that at the end thereof the duty devolved upon the city council to fix for the ensuing term the compensation of the officers. It may be if this was not done the presumption should prevail that the prior provision for fees was intended to prevail for the ensuing term; but, where by resolution or order the fees are fixed, no such presumption should prevail. The council, by ordinance No. 61, announced a permanent policy and declared such fees should be fixed by an order entered for each succeeding term. Ordinarily an ordinance is in its nature a continuing regulation, but how can an ordinance in face of the statute, requiring the city council to fix the salary before each and every election, be a continuing regulation? At the expiration of the term its function has ceased; especially is this true if the council acted. If the city council acts under the power granted, then there is no necessity to repeal an ordinance which has ceased to possess vitality, by virtue of the city's charter. The law limiting the purpose and time for which it was enacted itself has repealed it, or rather annulled its force and effect as an ordinance.

"If an ordinance contains a clause which prescribes a definite period for its operation, then it will expire of its own limitation." 28 Cyc. 388, Expiration, 2 note, 95.

The law, which is the charter, for the city, of necessity became part of the ordinance, and it limits the time for fixing salaries.

"It is well settled," says Chief Justice Marshall, "that an offense against a temporary act cannot be punished, after the expiration of the act." The Irresistible, Daniels Claimant, 7 Wheat. 551, 5 L. Ed. 520.

So we take it a recovery cannot be had under a temporary ordinance fixing compensation for a term six years previous to the one by virtue of which the commissions were claimed to have been earned. In the case of City of Uvalde v. Burney, 145 S. W. 311, Judge Fly, speaking for the court, said:

"Article 569 (now 816, R. C. S.), invoked by appellant, nullifies that ordinance by requiring that the salaries of officers shall be fixed at a certain time before each election. The ordinance could not, therefore, have existed more than two years."

[3] The resolution, upon which appellee relies, fixed the maximum sum to be received by the secretary and treasurer, and did not affect the method of calculating the commission which may be paid on the receipt of certain moneys, by Ordinance 100. The resolution complied with the statute, by fixing the amount of the fees and compensation to which the secretary and treasurer was entitled. The computation of the commission was not changed except in so far as it limited the amount. If Ordinance 100 had expir-

ed by reason of the time for which it was permitted to be operative by virtue of the statute, then the resolution was clear and unambiguous as to the amount the secretary and treasurer should receive; and we believe, if it merely limited the amount to be received out of the commissions allowed the secretary and treasurer on funds coming into his hands, the council then had the right for the ensuing term to fix a less amount than the maximum, which might accrue, under Ordinance 100. The city could do this by any method authorized by the charter, which, as seen, the city could do by resolution. McFall v. City of Austin, 1 White & W. Civ. Cas. Ct. App. §§ 450, 452. This did not repeal Ordinance 100, but fixed the compensation at an amount less than the maximum that might be ascertained by calculation thereunder. In the case of Blanchard v. Bissell, supra, taxes were levied by an ordinance, and it was there said:

"Beside, we are not aware of any provision in the statute which requires a town council to levy taxes solely by ordinance. Such an act, by whatever name it may be called, is properly in the nature of a resolution. It is of a temporary character, and prescribes no permanent rule of government. And though clothed in the forms of an ordinance, it may well have the effect of a resolution without the signature of the presiding officer."

See, also, City of Belton v. Head, 137 S. W. 417.

[4] Appellants appear to make the contention that salary and fees, which the resolution provided for, that is, should not exceed $10 per month salary, and fees not to exceed $2,000, did not include commissions. These terms have been held in this state to include commissions, and that the primary meaning of the word "fee" includes compensation in the nature of commissions. Austin v. Johns, 62 Tex. 179; Ellis County v. Thompson, 95 Tex. 22, 64 S. W. 927, 66 S. W. 48; Navarro County v. Howard, 129 S. W. 857. In our judgment there was no ground for uncertainty in the resolution, for the reasons above suggested. It is not at all reasonable that the city council intended and interpreted the resolution as giving to the city secretary and treasurer $2,120 annually, as a salary and fees, and in addition thereto $2,000 or $3,000 more for commissions on receiving and paying out moneys.

[5, 6] It is also urged that the court was in error in striking out that part of the appellant's answer, setting up the approval of his accounts, etc., as evidencing the interpretation placed on the ordinance and resolution by the council with reference to the compensation of Brown. We recognize the rule that the construction placed upon a statute by the officers whose duty it is to execute it is entitled to consideration, but courts are not bound to accept such construction when the act is clear and unambiguous. This rule should be confined to those cases in which the meaning is really doubtful. We can see

no doubt as to the amount of salary and fees the city secretary and treasurer was to receive under the resolution. It is clear and plain. It was the law governing that office when appellee Brown was inducted into office. His compensation was not changed thereafter. He must have known under that resolution what he was to receive. There was no act giving him more, and the city council had no right to pay or allow him more, if they did so. Dillon on Municipal Corporations, § 422, vol. 1 (5th Ed.). It is not alleged by appellants in their answer that Brown paid these sums of money upon an order by the mayor, attested by the secretary to himself as treasurer. The substance of the allegation appears to be that he made his reports, showing such commissions, which reports where approved, and the city thereby acquiesced in and placed thereby the construction that the resolution only covered fees and salary, and not commissions as treasurer. It is therefore inferred the city council gave the resolution the interpretation contended for by appellants. The treasurer could only make payments upon the order of the mayor attested by the city secretary, under the law of the corporation. Article 811, R. C. S. These commissions are not alleged so to have been paid. The reports might, and properly did, show the commissions going to the treasurer; yet the city council would take such commissions and other fees into consideration in ascertaining if the secretary and treasurer should receive the maximum allowed, $2,120. They would not necessarily know that by the report it was intended by Brown to appropriate all the commissions by the treasurer to his individual use. We therefore think, in order to show that the city council intended to allow Brown the entire commissions, it should be alleged and also shown that the same was paid upon the order of the mayor and properly attested and reported as so paid upon the order of the proper officers to Brown.

[7-10] Appellants also contend that the city paid to Brown the money under a mutual mistake of law, and for that reason cannot recover it. The facts do not warrant the finding of any such payment; on the contrary, it is conclusive from the evidence that the money was received by Brown by virtue of his office, and that he simply retained the same, claiming it as part of his compensation and as we think without any order authorizing him to do so. In order to sustain appellants' contention, it should be shown that it was paid upon the order of the council. Article 811 provides:

"No order shall be paid unless said order shall show upon its face that the city council has directed its issuance, and for what purpose."

So, if the ordinance and resolution did not warrant the payment, the mayor could give no order therefor and there was no direction by the council for its payment.

Brown received the money in trust, and under the law it was his duty to faithfully hold the same and deliver it to the city at the expiration of his term of office. It is also contended that the sureties are not liable on the treasurer's bond for the reason that the condition of the bond required him only to "faithfully receive and disburse all moneys belonging to the said city, in accordance with the laws of the state of Texas, and the ordinances of the city of Amarillo"; that he was not required to disburse according to a resolution. The laws of the state required him to execute a bond for the faithful discharge of his duties and in such form as should be required by the city council. If the money so retained was not his, then he could not keep it without violating the laws of the state. The resolution did not require any distribution of the money, but only fixed his salary; hence the condition of the bond was not affected thereby further than it may have incidentally shown what amount he could retain. Article 800, R. C. S., clearly requires an outgoing officer to turn over funds belonging to the city, which had been intrusted to his custody as such, and he is liable in a civil suit in case of failure as well as for other penalties. The law therefore clearly made it Brown's duty to turn over the funds, and the bondsmen guaranteed he would do so. They will not therefore be relieved of that duty, simply because he contends the resolution was ineffective to fix his compensation. If, as we hold, this resolution limited the compensation which he was to receive, was passed in accordance with the law, then he and his bondsmen are liable for whatever sum was retained above the amount so allowed him. Wilson v. Wichita County, 67 Tex. 649, 4 S. W. 67.

[11] The appellants assign as error on the part of the court in admitting in evidence the bonds, over their objection. The bonds were sued upon and substantially set out in the original petition, and the appellants, by their answers, admitted executing them. There could have been no injury or error in admitting them in evidence.

[12] The sureties also assign error in that the court did not allow them their peremptory challenge to the jury. If this was an error, which we do not decide, it was harmless. The trial court took the case from the jury, and instructed a verdict.

We believe the judgment of the trial court should be affirmed, and it is, accordingly, so done.

### On Motion for Rehearing.

HENDRICKS, J. [13] The appellants, Brown and the sureties upon his official bond as city treasurer, are insistent, upon their motions for rehearing, for an executive interpretation of the meaning of the resolution fixing the salary and fees as emoluments of his office, as an essential element in this case, and that they should have been permitted to have gone to the jury, by virtue of their pleadings, upon that question.

Referring again to section 12 of Ordinance No. 2, as amended, exhibited in the preliminary part of the original opinion, the same provides a compensation to the city secretary, for performing the duties of city treasurer, upon a commission basis, at different rates, on account of different funds, as prescribed in said ordinance. The closing sentence of said ordinance is:

" * * * But the city secretary acting as treasurer, shall not be entitled to any commissions for receiving any moneys from his predecessor, nor for paying over same to his successor."

This ordinance clearly exhibits at least the duality of performance by the city secretary of the duties of the city treasurer. The resolution passed December 31, 1909, providing that "the salary of the city secretary and treasurer, for the ensuing term be fixed at $10.00 per month and fees, as set by ordinance, up to $2,000.00 per annum, any amount exceeding $2,000.00 to be paid into the city treasury," evidently refers to amended section 12, of Ordinance No. 2, above mentioned. There is no other ordinance disclosed in this record, setting up any fees for this officer acting in a dual capacity. Amended section 12, of said ordinance, is unlimited in its nature as to the particular commissions applied to the separate funds, for which he was to receive compensation. The resolution of 1909, in connection with said amended ordinance, clearly and unambiguously means that the fees, as set by that ordinance, according to the compensation upon a commission basis, shall not exceed a certain amount. If upon the basis of 2½ per cent. as applied to certain funds, and 1½ per cent. and one-half of 1 per cent. as applied to other funds, the commissions, in connection with the other fees of his office, did not amount to as much as the maximum prescribed by the resolution, Brown was entitled to the same; but if, all combined, it was exceeded, the fees and commissions belonged to the city. In other words, the commissions mentioned in the ordinance in connection with the language "fees as set by ordinance" are comprehended within the term "fees," which it may be, in connection with other fees, as an officer, would be the source of his revenue, not to exceed, however, as city secretary and treasurer, the amount of the resolution. If there are other ordinances which prescribe and designate fees referable to his position as city secretary, the same are not shown in the record; if they were so exhibited, we do not think it would militate against the construction. Brown has to refer to amended section 12 of Ordinance No. 2 to obtain a rate for his compensation, in so far as his revenue derivable from the collection and payment of moneys is concerned, and the resolution evidently refers to the

same ordinance for his "fees as set by ordinance" for the same rate, as applied to commissions. There is no ambiguity.

[14] A great deal is said in the argument of the appellants' sureties, on their motion for rehearing, that no breach of the treasurer's bond is shown. We wholly disagree with that contention. The pleading is clear in stating that Brown in receiving and retaining an excessive amount over the maximum prescribed by the resolution of 1909, and the failure to pay over the same, constitutes a breach of the bond as treasurer, when read as a whole. This resolution prescribed the amount that he was to receive as city secretary and city treasurer. If Brown, as, city treasurer, when he received the moneys of the city permitted Brown, as city secretary, to also receive and retain an excessive amount prescribed by law, the treasurer is certainly liable, and his bondsmen likewise. In order for Brown, as secretary, to receive and retain this money, he necessarily received and retained it from Brown as city treasurer, and the city treasurer had no lawful justification for permitting it under the authorities.

Both motions are overruled.